1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT

7

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

9    GEORGIY KULYA,

10            Plaintiff,                         No. C 06-06539 JSW

11    v.

12    CITY AND COUNTY OF SAN FRANCISCO,      **ORDER GRANTING MOTION**
      ET AL,                                **FOR SUMMARY JUDGMENT**
13

14            Defendants.
      _____/

15

16           This matter comes before the Court upon consideration of the motion for summary

17    judgment filed by Defendants.  Having considered the parties' papers, relevant legal authority,

18    and the record in this case, and having heard oral argument, the Court GRANTS Defendants'

19    motion.

20                                    **BACKGROUND**

21           On September 24, 2005, six-year-old Yvan K. ("Yvan") told his mother, the ex-wife of

22    Plaintiff Georgiy Kulya ("Georgiy"), that his father had hit him on multiple parts of his body,

23    including a closed fist blow to the forehead.  The parents had been involved in bitter divorce

24    proceedings years earlier and Georgiy was granted primary custody with weekend visitation

25    with Yvan's mother.  After taking her son to the Taraval Police Station, Yvan repeated the story

26    to several officers and paramedics, both in and outside the presence of his mother, in both

27    English and his native Russian.  Yvan's recitation of the facts remained consistent throughout

28    and the officers and paramedics observed marks and bruises on the child.  Based on the child's

*United States District Court*
For the Northern District of California

1  report and demeanor, as well as the physical evidence, the police officer defendants ordered and

2  carried out Georgiy's arrest and reported the incident to Child Protective Services.

3       Based on the report, the social services agency workers began to investigate Yvan's

4  allegations.  Based on their determination that there were exigent circumstances, the social

5  worker defendants held Yvan in custody for one night and filed a state law child dependency

6  petition.  While the investigation continued for approximately one week, Yvan stayed with his

7  mother.  After Yvan's recantation of the allegations, the social service agency withdrew the

8  dependency petition and Yvan was returned to his father's custody.

9       Georgiy filed suit against several police officers who ordered and effected his arrest as

10  well as various social workers who initiated the investigation and determined to detain Yvan.

11  Plaintiffs allege causes of action for: (1) civil rights violations under 42 U.S.C. § 1983 for both

12  father and son against the social worker defendants for deprivation of familial association; (2)

13  civil rights violations under 42 U.S.C. § 1983 against the social worker defendants for Yvan for

14  his initial seizure and detention; (3) civil rights violations under 42 U.S.C. § 1983 against the

15  social worker defendants on behalf of father and son for the continued placement of Yvan with

16  his mother pending the investigation or dependency hearing; (4) civil rights violations under 42

17  U.S.C. § 1983 against the police officer defendants for Georgiy based on his arrest; (5) civil

18  rights violation against the social worker defendants on behalf of father and son in violation of

19  California Civil Code § 52.1; (6) intentional infliction of emotional distress; (7) battery for

20  Georgiy against the arresting police officers; (8) false arrest/imprisonment on behalf of Georgiy

21  against the police officers; and (9) false arrest/imprisonment on behalf of Yvan against the

22  social workers.

23       The Court shall address additional facts as necessary to its analysis in the remainder of

24  this Order.

**ANALYSIS**

25

26  **A.      Legal Standards Applicable to Motions for Summary Judgment.**

27       Summary judgment is proper when the "pleadings, depositions, answers to

28  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

*United States District Court*
For the Northern District of California

2

1   genuine issue as to any material fact and that the moving party is entitled to judgment as a

2   matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence

3   for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*,

4   477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case.

5   *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the

6   evidence or make credibility determinations, and is required to draw all inferences in a light

7   most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.

8   1997).

9          A principal purpose of the summary judgment procedure is to identify and dispose of

10   factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The

11   party moving for summary judgment bears the initial burden of identifying those portions of the

12   pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of

13   material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at

14   trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for

15   the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party

16   must go beyond the pleadings and by its own evidence "set forth specific facts showing that

17   there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify

18   with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*,

19   91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251

20   (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a

21   genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving

22   party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

23   **B.      Legal Standards Applicable to Qualified Immunity.**

24          In support of their motion, Defendants argue that they are entitled to qualified immunity

25   on Plaintiff's claims. Qualified immunity is "an entitlement not to stand trial or face the other

26   burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is an

27   immunity from suit rather than a mere defense to liability. *Id.* As a result, the Supreme Court

28   has repeatedly stressed the importance of resolving immunity questions at the earliest possible

United States District Court
For the Northern District of California

3

stage in litigation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

In *Saucier*, the Supreme Court stated that a court called upon to rule on the issue of qualified immunity must ask the following threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *See id.* (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, if the Court finds that the facts would show the violation of a constitutional right, the next inquiry is to determine "whether the right was clearly established." *Id.*

A constitutional right is clearly established for qualified immunity purposes if "[t]he contours of the right [are] sufficiently clear that [at the time the alleged unlawful action is taken] a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ...; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640. "In other words, an officer who makes a reasonable mistake as to what the law requires under a given set of circumstances is entitled to the immunity defense." *Boyd v. Benton Co.*, 374 F.3d 773, 781 (9th Cir. 2004) (citing *Saucier*, 533 U.S. at 205). Thus, a court "must determine whether the law governing the official's conduct was clearly established at the time the challenged conduct occurred." *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994) (citing *Hallstrom v. Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993)). A court should then address the question "whether, under that clearly established law, a reasonable officer could have believed the conduct was lawful." *Id.*

**C.      Claims Against the Defendants Police Officers.**

Before even considering the issue of qualified immunity, the Court must determine whether the police officers had probable cause to arrest Georgiy. Because the Court finds that they did have probable cause and therefore there is no constitutional violation, that ends the

inquiry.  The Court need not analyze the second step to determine whether the officials' conduct violated clearly established rights.

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested."  *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  The Court looks to "the totality of the circumstances known to the arresting officers, [to determine if] a prudent person would have concluded there was a fair probability that [the defendant] had committed a crime."  *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986).  Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial for Fourth Amendment purposes.  *Lopez*, 482 F.3d at 1072.

The determination whether these was probable cause is based upon the information the officer had at the time of making the arrest.  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest").  It is essential to avoid hindsight analysis, *i.e.,* to consider additional facts that became known only after the arrest was made.  *Cf. Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (holding that the reasonableness inquiry is judged from the perspective of a reasonable office on the scene rather than with 20/20 vision of hindsight).

**1.      Fourth Cause of Action is Dismissed.**

In his fourth cause of action, Plaintiff Georgiy alleges that the police officer defendants deprived him of his Fourth Amendment right to be free of unreasonable search and seizure due to his warrantless arrest and brief detention.  The Court finds that summary judgment on this claim is appropriate because the undisputed facts establish that there was legally sufficient probable cause to arrest Plaintiff, and the police officers may lawfully detain and arrest a person if they have probable cause to do so.  *See Beck v. Ohio*, 379 U.S. 89, 91 (1964).  The plaintiff in a civil rights action has the burden of demonstrating lack of probable cause, after a defendant has provided "some evidence that the arresting officers had probable cause for a warrantless

United States District Court

For the Northern District of California

5

arrest." *Dubner v. City & County of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001).  The determination of whether probable cause existed focuses on the "facts available to the officers at the moment of the arrest." *Beck*, 379 U.S. at 89, 96.  The existence of probable cause necessarily turns upon the particular facts of the individual case.  *John v. City of El Monte*, 515 F.3d 936, 941 (9th Cir. 2008).

In this matter, Plaintiff Georgiy was arrested on a charge of violating California Penal Code § 273d(a), felony child endangerment.  The elements of the offense are willful infliction of cruel and inhuman corporal punishment or an injury resulting in a traumatic condition. Before going to arrest Georgiy, the police officers had the following information: (1) Yvan had told his mother who reported to the police, that Georgiy had struck the child with a closed fist; (2) Yvan told Officer Lew that his father had hit him with a closed fist; (3) Yvan told Officer Popoz the same thing, in Russian and out of the presence of his mother; (4) Yvan had reported the same event to two paramedics; (5) Yvan complained of back pain; and (6) there was a visible bruise on Yvan's thigh.  (*See* Shapiro Decl., Ex. 2 at 36:24-37:24, 49:22-50:25; Ex. 3 at 33:2-34:22; Ex. 5 at 12:1-13:18; Ex. 6 at 17:19-24.)

In *John v. City of El Monte*, 515 F.3d 936 (9th Cir. 2008), the Court reversed the decision of the district court denying summary judgment on a claim of qualified immunity.  In that case, the appellate court found that the officer had probable cause to arrest a female teacher for allegedly sexually molesting a ten-year-old female student.  The officers interviewed the alleged victim, found her description of events to be accurate, and found the contemporaneous evidence of notes describing the teacher behaving inappropriately to corroborate the allegations. *Id.* at 941.  The court found that the officers "had probable cause to arrest because 'under the totality of the circumstances known to the arresting officer[], a prudent person could have concluded that [she] had committed the crime.'" *Id.* (citing *Peng v. Penghu*, 335 F.3d 970, 976 (9th Cir. 2003)).

Plaintiff, however, argues that the information known to the police officers at the time of his arrest is insufficient as a matter of law to rise to the level of probable cause to arrest.  First, Plaintiff contends that the officers' reliance on the boy's report of the alleged abuse was

6

United States District Court

For the Northern District of California

misplaced as the boy was likely coached by his mother as part of an ongoing custody dispute between the parents. Plaintiff contends that an objectively reasonable officer would have conducted a further investigation, including calling the accused father to ascertain his version of events. The Court finds that such a course was not necessary – there is no support for the position that an arresting officer inquire of the suspect whether the charges against him are well-taken.[1] Further, Plaintiff tries to distinguish relevant authority on the basis that the reporting child was older and there was no physical evidence of a crime. The Court finds those distinctions unpersuasive. There was physical evidence of bruising on the child, although there is some dispute about the extent of such bruising. Further, the fact that the six-year-old boy was consistent over the five times he recounted the experience with his father is further support for the reasonable belief that there was probable cause to arrest the father.

In *John*, the Court further stated that

> In the context of the probable cause inquiry, we cannot say that on this evidence, a reasonable jury could have reached the opposite conclusion. Even if a reasonable jury might conclude the officer lacked probable cause, the arrest was not contrary to any clearly established law, so the officer was entitled to qualified immunity from a jury trial.

*Id.* Similarly, here, the Court finds that the physical evidence of bruises on the child's thigh and the child's consistency throughout five opportunities to retell the events, under the totality of the circumstances, demonstrates that the arresting officers had probable cause. Therefore, the Court finds that because there was no constitutional violation and the fourth claim for violation of Plaintiff Georgiy's civil rights is subject to summary judgment. Furthermore, the Court finds that even if there were a factual dispute regarding probable cause, the police officers are entitled to qualified immunity.

Even assuming there was a triable issue of fact relating to the existence of probable cause to arrest Plaintiff Georgiy, the Court must determine whether "it would be clear to a

---

[1] The Court finds the case cited by Plaintiffs, *Sevigny v. Dicksey*, 846 F.2d 953, 956 (4th Cir. 1988), to be entirely distinguishable on the facts. In that case, the Court found that the police officers failed to conduct a proper investigation where the officers declined to interview an impartial neighbor who allegedly witnessed the criminal acts. Here, inquiring of the accused whether he in fact abused his own child is clearly distinguishable and the Court does not hold that the lack of this inquiry renders the arrest unconstitutional for lack of due process.

reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202.  "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.*  Given the undisputed facts, the officers involved had a reasonable belief that they had probable cause to arrest Plaintiff pursuant to California Penal Code § 273d(a).  Even if the reasonable belief were mistaken, qualified immunity attaches because their conduct did not violate a clearly established constitutional right.  *See Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (holding that defendants were entitled to qualified immunity because, although mistaken, they reasonably believed that their conduct did not violate a clearly established constitutional right).

### 2.     Seventh Cause of Action is Dismissed.

Further, because the Court finds there was reasonable cause to arrest, the causes of action for battery in carrying out the arrest and false imprisonment claim associated with Plaintiff Georgiy's detention are subject to summary judgment.  *See* California Penal Code § 835a ("any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest.")  Plaintiff has not alleged excessive force during his arrest, and accordingly, as Plaintiff conceded at oral argument on this motion, the cause of action for battery is subject to summary judgment.

### 3.     Eighth Cause of Action is Dismissed.

Similarly, the cause of action for false arrest/false imprisonment is subject to summary judgment as the existence of probable cause is a complete defense to a claim of false arrest.  *See White v. Martin*, 215 Cal. App. 2d 641, 643 (1963); Cal. Penal Code § 836.5(b) (barring liability "arising out of any arrest that is lawful or that the public office of employee, at the time of the arrest, had reasonable cause to believed was lawful.")

Accordingly, the Court GRANTS summary judgment as to claims four, seven and eight.

**D.      Claims Against the Defendant Social Workers.**

      **1.      First and Second Causes of Action Are Dismissed.**

      The first and second causes of action allege that the various social workers involved in this matter violated both Plaintiffs' constitutional rights in violation of 42 U.S.C. § 1983 by removing the minor from the custody of his father in violation of the rights of familial association with each other.  Plaintiffs allege that the child was removed without consent, probable cause, a protective custody warrant and without exigent circumstances justifying such removal.  Similar to the police officer defendants, in order to prevail, Plaintiffs must demonstrate that (1) the social workers violated a clearly established constitutional right and (2) that they unreasonably believed that their conduct was constitutionally sound.  *See Saucier*, 533 U.S. at 201.

      Although the rights to familial association is protected by the Constitution, parents have a right not to "be separated from their children without due process of law, except in emergencies."  *Mabe v. San Bernadino County Dep't of Public Social Services*, 237 F.3d 1101, 1107 (9th Cir. 2001).  Removal of a child is warranted "without a prior judicial authorization if the information [officials] possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury."  *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000) (citations omitted).  In this case, the social workers were aware that (1) the child had repeatedly told the police officers and paramedics the same, consistent story that his father had abused him; (2) there were bruises noted on the child's body; (3) the father had been arrested for the alleged offense for felony abuse of the child which arrest was highly unusual; (4) the father had a prior substantiated case of child abuse on his record; and (5) Defendant Deborah Goldstein had asked the father, through speaking with his attorney, whether he preferred the child remain with the mother pending a more thorough investigation or if he would prefer to have the child sheltered, and the father opted for removal.  (*See* Shapiro Decl., Ex. 9 at 75:18-78:25, 138:17-19, 139:10-11, 142:14-143:15, 166:13-167:24, 169:2-170:4; Ex. 12 at 51:4-24, 70:10-71:25, 81:4-23, 91:10-92:18, 104:15-18; Declaration of Robert R. Powell,

1    Ex. N at 95:15-103:21, 114:15-24, 164:12-168:12, 169:22-170:4; Ex. P at 71:5-72:25, 74:19-

2    20.)

3          Under these undisputed factual circumstances, the Court finds that there were exigent

4    circumstances giving rise to the need to remove the son from the father's custody without

5    obtaining a protective custody warrant.  Here, there is no dispute of material fact regarding the

6    circumstances regarding whether there was reasonable cause to believe the child faced an

7    immediate threat of abuse.  *See Ram v. Rubin*, 118 F.3d 1306, 1311 (9th Cir. 1997) ("serious

8    allegations of abuse which are investigated and corroborated usually give rise to a reasonable

9    inference of imminent danger.")  Therefore, the social worker defendants are entitled to

10   judgment as a matter of law.[2]

11         However, even assuming *arguendo* that the social workers violated Plaintiffs'

12   constitutional rights, they were reasonable to believe that their conduct was within

13   constitutional parameters, considering there was ample undisputed indicia of potential harm to

14   the child.  As a social worker with years of experience, in addition to all of the information she

15   had, Ms. Goldstein was acting reasonably when she felt concerned that, upon his release from

16   custody, the father might have been justifiably angry.  (*See* Shapiro Decl., Ex.9 at 138:17-19,

17   139:10-11, 166:13-167:24, 169:2-170:4.)  Given the choice between an elected removal of the

18   child for one night in a shelter and the possibility of the parent's possibly retributive anger, in

19   conjunction with the current allegations and a substantiated past history, the social workers

20   acted reasonably in removing the child.  Therefore, they are entitled to qualified immunity as a

21

22         [2]  To the extent Plaintiffs have attempted to state a claim for *Monell* liability on the
     part of Children Protective Services as an agency, such a claim is without merit as the Court
23   finds that the exigent circumstances in this matter justified the removal of the child without
     further due process. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691
24   (1978) (holding that a municipal agency may not be "held liable unless action pursuant to
     official municipal policy of some nature caused a constitutional tort.")  Thus, to establish that
25   the *Monell* liability, Plaintiffs must demonstrate that: (1) they had a constitutional right of
     which they were deprived; (2) the agency had a custom created by those who may be fairly
26   said to determine official policy, which amounted to, at a minimum, deliberate indifference
     to Plaintiffs' constitutional rights; and (3) the custom was the moving force behind the
27   constitutional violation.  *See Blair v. City of Pomona*, 223 F.3d 1074, 1079 (9th Cir. 2000);
     *see also Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).  Plaintiffs have not met their
28   burden either to establish that there was such a constitutional violation or that the agency had
     a custom of such violations.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  matter of law.  Therefore, the first and second causes of action fail for this additional reason.

2  *See Saucier*, 533 U.S. at 201.

3  **2.     Third and Ninth Causes of Action Are Dismissed.**

4  The undisputed facts also justify the social workers' continued detention of the child

5  pending a full investigation and therefore Plaintiffs' third cause of action for violation of the

6  child's civil rights in violation of 42 U.S.C. § 1983 fails as well.  Plaintiff Georgiy contends that

7  the social workers acted in violation of his due process rights when filing a dependency petition

8  and continuing Yvan's placement with his mother pending further investigation.  In order to

9  violate one's right to substantive due process here, the conduct must be so offensive and

10 intentional as to "shock the conscience."  *County of Sacramento v. Lewis*, 523 U.S. 833, 846

11 (1998).  The Court does not find that, considering the undisputed facts, the conduct undertaken

12 by the social worker defendants constitutes conduct that was so offensive and intentional as to

13 shock the conscience.  Rather, the agency determined that a further investigation was warranted

14 and, having placed the child in the mother's care, erred on the side of caution in not returning

15 the child to the previous custody schedule which would have required placing Yvan back in the

16 care of his father, against whom an investigation was pending.  The agency also withdrew the

17 dependency petition without waiting for the decision of the Family Court, based on its

18 investigation and returned Yvan to his father's care within one week of the original detention.

19 The Court finds that, under the undisputed circumstances presented to the social workers, they

20 did not act in a manner so intentional and offensive as to shock the conscience.  Accordingly,

21 summary judgment as to the third claim for relief is appropriate.  Because the Court finds that

22 the continued placement of Yvan with his mother does not constitute an unconstitutional

23 detention, the Court likewise grants summary judgment as to the ninth cause of action for the

24 state law claim based upon the same facts for false arrest/imprisonment as to Yvan.

25 **3.     Fifth Cause of Action is Dismissed.**

26 Both Plaintiffs allege a cause of action under California Civil Code § 52.1 against two of

27 the social worker defendants based on their alleged attempt to coerce Georgiy into agreeing to

28 let his son stay with his mother pending an investigation.  Section 52.1 proscribes

11

"interfer[ence] by threats, intimidation or coercion, or attempts to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any individual of rights secured" by the federal or state constitution.  Cal. Civ. Code § 52.1(a).  Section (j) of the same statute provides:

> Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat.

Viewing the facts alleged in the light most favorable to Plaintiffs, the Court finds that the acts complained of are speech alone and therefore fail to state a claim under California Civil Code § 52.1.  Accordingly, the Court grants summary judgment as to Plaintiffs' fifth cause of action.

### 4.    Six Cause of Action is Dismissed.

Plaintiffs allege a cause of action for intentional infliction of emotional distress ("IIED").  To state a claim for IIED, a plaintiff must allege: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress."  *Cole v. Fair Oaks Fire Dept.*, 43 Cal. 3d 148, 155 n.7 (1987).  This tort imposes liability for "conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress."  *Id.*

The Court has already found that, taken in the light most favorable to Plaintiffs, the undisputed facts do not demonstrate that the conduct by defendants was so offensive or intentional as to shock the conscience.  Similarly, and for the same reasons, the Court does not find that the allegations made in support of Plaintiffs' IIED claim state a claim upon which relief may be granted.[3]  Accordingly, summary judgment as to the six cause of action is granted.

---

[3]  In the alternative, upon dismissal of the federal claims, the Court declines to exercise jurisdiction over Plaintiffs' state law claims (claims six through nine).  *See* 28 U.S.C. § 1367(c)(3).

United States District Court
For the Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment.  A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated:  September 26, 2008

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

13